Yolanda LEAL, et al., Appellants,

v.

Jose Q. MORENO, et al., Appellees.

No. 13–86–555–CV.

Court of Appeals of Texas,
Corpus Christi.

June 4, 1987.

Horacio L. Barrera, Brownsville, for appellants.

William Harris, Killeen, Roger W. Hughes, Ferriel C. Hamby, Jr., Adams, Graham, Jenkins, Graham & Hamby, Harlingen, for appellees.

Before UTTER, KENNEDY and DORSEY, JJ.

## OPINION

UTTER, Justice.

Emiliano Moreno was killed while employed by the City of Brownsville. Both Moreno's parents and appellants filed claims for death benefits under the Worker's Compensation Act. Tex.Rev.Civ.Stat. Ann. art. 8306 (Vernon 1967). Yolanda Leal claimed to be the common-law wife of the deceased and the mother of his child, Emiliana. The Industrial Accident Board found in favor of appellants. Appellees filed suit appealing the Board's decision. The trial court granted appellees' motions for summary judgment, reversing the decision of the Board and awarding the benefits to the parents. We affirm the judgment of the trial court.

By their first point of error, appellants contend that the trial court erred in finding no common-law marriage.

In order to prevail on a summary judgment motion, the movant has the burden to show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *MMP, Ltd. v. Jones*, 710 S.W.2d 59 (Tex.1986). When reviewing the granting of a summary judgment, we view the evidence in the light most favorable to the nonmovant and indulge every reasonable inference in the non-movant's favor. *Wilcox v. St. Mary's University*, 531 S.W.2d 589 (Tex.1975). Appellants did not file a response to either motion for summary judgment.

The elements of a common law marriage are: (1) a present agreement to be husband and wife; (2) living together as husband and wife; and (3) holding each other out to the public as such. *Estate of Claveria v. Claveria*, 615 S.W.2d 164 (Tex. 1981); *Ortiz v. Santa Rosa Medical Center*, 702 S.W.2d 701 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); Tex.Fam.Code Ann. § 1.91(a)(2) (Vernon 1975). An agreement to be married may be inferred if it is proven that the parties lived together as husband and wife and represented to others that they were married. Tex.Fam.Code Ann. § 1.91(b) (Vernon 1975). It is not sufficient to agree on present cohabitation and future marriage; there must be a present agreement to be married. *Rosetta v. Rosetta*, 525 S.W.2d 255 (Tex.Civ.App.—Tyler 1975, no writ); *Gary v. Gary*, 490 S.W.2d 929 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.); *see also Aguilar v. State*, 715 S.W.2d 645 (Tex.Crim.App.1986).

Portions of Ms. Leal's deposition were attached to both motions for summary judgment. Ms. Leal testified that she and the deceased "were planning to get married," and had moved in with her sister to "try out" the relationship before "actually" getting married. Her testimony is replete with statements and admissions that they were merely "trying out" their relationship and if everything worked out, they would get married in January of 1984. The deceased died on December 16, 1983. In the present case, Ms. Leal's testimony conclusively established that there was no *present* agreement to be married. Appellant's first point is overruled.

By their second point of error, appellants contend that the trial court erred in determining that the deceased was not the father of Emiliana. Since it was established that there was no ceremonial or com-

mon-law marriage, there was no presumption that the child was legitimate. The burden then shifted to appellant to prove that the deceased was the natural father of the child.

Dr. James Geyer, a specialist in disputed paternity testing, also testified by deposition. Portions of his deposition were attached to both motions for summary judgment. Dr. Geyer's findings were not disputed by medical testimony.

He testified that his laboratory performed tests on blood samples from Emiliana, Ms. Leal, both parents of the deceased,[1] and two of the deceased's sisters. It was Dr. Geyer's opinion that based upon his tests, "there is a medical certainty that Emiliano Moreno [the deceased] could not be the true biological father of Emiliana."

■ In order for evidence of blood tests to come under the purview of Tex.Fam. Code Ann. § 13.05 (Vernon 1986), the suit must be one to establish paternity. *See Magana v. Magana*, 576 S.W.2d 131 (Tex. Civ.App.—Corpus Christi 1978, no writ).

The City of Brownsville admits liability for death benefits to whomever is finally determined to be the lawful beneficiaries of the deceased. If the deceased is proven to be the biological father of Emiliana, then she would be entitled to the death benefits. Tex.Rev.Civ.Stat.Ann. art. 8306, § 8a (Vernon Supp.1987); Tex.Probate Code Ann. § 38(a)(1) (Vernon 1980).

■ The parents alleged that Emiliana is not the natural child of the deceased and is therefore not entitled to receive death benefits. Appellants counterclaimed, contending that Emiliana is the child of the deceased.[2] The counterclaim is therefore a suit to establish paternity.

■ Paternity may be conclusively *disproved* by use of properly conducted blood tests. *C.G.W. v. B.F.W.*, 675 S.W.2d 323 (Tex.App.—San Antonio 1984, no writ); *In re E.G.M.*, 647 S.W.2d 74 (Tex.App.—San Antonio 1983, no writ).

Tex.Fam.Code Ann. Section .13.05 (Vernon 1986) provides that "if the [trial] court finds that the [blood] tests show by clear and convincing evidence that the alleged father is not the father of the child, the court shall dismiss the suit with prejudice." The legislature apparently intended that blood tests be *conclusive* evidence of *nonpaternity*, despite other evidence to the contrary, such as the mother's testimony that the alleged father *is* the father of the child. In this case, the mother testified that she had sexual relations and "dated" only the decedent between January and December 1983. There is also evidence that she became pregnant in November, 1983.

However, Dr. Geyer testified that the blood tests established to an "absolute medical certainty" that particular white blood cell factors in Emiliana could only have come from her biological father because Ms. Leal does not have those factors. He further stated that the parents of the deceased could not have had a child with the white blood cell factors that Emiliana's biological father necessarily had. Dr. Geyer's undisputed testimony that it was a "medical certainty" that the deceased was not the biological father conclusively established non-paternity, as a matter of law. There being no material fact issue as to paternity, the summary judgment was proper. Appellants' second point is overruled.

The judgment of the trial court is AFFIRMED.

---

1. By failing to respond to requests for admissions, appellants admitted that Mr. and Mrs. Moreno were the biological parents of the deceased.

2. An action to establish paternity may be brought after the death of the alleged father. *Manuel v. Spector*, 712 S.W.2d 219 (Tex.App.—San Antonio 1986, no writ).