Roberto GARDUNO, Appellant,

v.

Margarita GARDUNO, Appellee.

No. 13–87–513–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 20, 1988.

Rehearing Denied Nov. 17, 1988.

Fred Galindo, Brownsville, for appellant.

Cesar A. Amador, Richard C. Arroyo, Arroyo, Costilla, Stapleton & Uribe, Brownsville, for appellee.

Before KENNEDY, UTTER and SEERDEN, JJ.

## OPINION

KENNEDY, Justice.

Roberto Garduno appeals from the judgment of the trial court finding that he and Margarita Garduno, appellee, had entered both putative and common law marriages to each other between 1980 and 1986. The court granted appellee's petition for divorce, awarded her certain property held by the couple during those years, and ordered appellant to pay arrearages on a temporary support order entered earlier. Appellant brings six points of error challenging the sufficiency of the evidence to show that a putative or common law marriage ever arose, the court's award of property to appellee based on a putative or community property interest, and the court's order for temporary support of appellee.

According to her testimony, appellee met appellant in the latter part of 1979, shortly after she divorced her former husband with whom she had lived in Mexico. Appellant told appellee that he was divorced also at that time. In early 1980, appellee moved into a condominium unit that appellant

738

owned in Brownsville. Appellant moved into the same unit around the middle of the year, and the two lived there together and represented themselves to others as husband and wife from that time until appellee moved out in 1986.

In January of 1981, appellee learned from appellant's daughter that he was still married to a woman who lived in Mexico. Appellant, however, assured her that he would divorce his wife and that he intended to marry appellee. Appellant then attempted to divorce his wife through the Mexican courts. In April 1984 he obtained a Mexican divorce decree which he showed to appellee. However, appellant's Mexican divorce lawyer informed him shortly thereafter that the divorce had been set aside by an appellate court, which appellant also told appellee.

Finally, appellant petitioned for divorce in Texas and a decree was signed on December 3, 1985. The couple continued to live together until appellant physically assaulted appellee in the spring of 1986. Appellee then moved out of the condominium unit and petitioned for divorce. Appellee also petitioned for a temporary support order, which was not made a part of the record on appeal.

During the course of their relationship, the couple acquired a large amount of property, including a 1986 Volkswagon with title in both names and used primarily by appellee, a 1985 Cadillac used primarily by appellant, a $100,000 certificate of deposit which was put in appellant's name in trust for appellee, a vacation time share plan in both names, and 1,500 shares of stock in United Amore's, Inc. Appellant had purchased the condominium unit before he met appellee, but conveyed it to the couple jointly in 1984. In the present divorce decree, the trial court awarded to appellee the personal property and cash in her possession, the 1986 Volkswagon, and a 25% interest in the certificate of deposit, the stock, the vacation time share plan, and the condominium unit, based upon half of appellant's community property half-interest in the property. (his former wife owned the other half) All other property was

awarded to appellant. The court finally ordered appellant to pay $3,400 in arrearages from the prior order for temporary support.

In points one, two, and seven appellant complains that the trial court erred in finding that either a putative or a common law marriage arose during the period of the couple's relationship. Point one complains that a putative marriage could not have arisen, because appellee was aware of appellant's prior undissolved marriage. Points two and seven challenge the sufficiency of the evidence to establish the existence of a common law marriage after appellant divorced his first wife. In considering a "no evidence", "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W. 2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

The elements of a common law marriage are: (1) a present agreement to be husband and wife; (2) living together as husband and wife; and (3) holding each other out to the public as such. Tex.Fam. Code Ann. § 1.91(a)(2) (Vernon 1975); *Estate of Claveria v. Claveria*, 615 S.W.2d 164 (Tex.1981); *Leal v. Moreno*, 733 S.W. 2d 322, 323 (Tex.App.—Corpus Christi 1987, no writ).

A putative marriage is one that was entered into in good faith by at least one of the parties, but which is invalid by reason of an existing impediment on the part of one or both parties. *Dean v. Goldwire*, 480 S.W.2d 494, 496 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.). A putative marriage may arise out of either a ceremonial or common law marriage. *Rey v. Rey*, 487 S.W.2d 245, 248 (Tex.Civ.App.—El Paso 1972, no writ); *Whaley v. Peat*, 377

S.W.2d 855, 858 (Tex.Civ.App.—Houston [1st Dist] 1964, writ ref'd n.r.e.). The effect of a putative marriage is to give the putative spouse who acted in good faith the same right in property acquired during the marital relationship as if he or she were a lawful spouse. *Davis v. Davis,* 521 S.W.2d 603, 606 (Tex.1975); *Padon v. Padon,* 670 S.W.2d 354, 356 (Tex.App.—San Antonio 1984, no writ). However, there being no legally recognized marriage, property acquired during a putative marriage is not community property, but jointly owned separate property. *See Mathews v. Mathews,* 292 S.W.2d 662, 665 (Tex.Civ.App.—Galveston 1956, no writ).

It is clear from the evidence that appellant's prior marriage was an impediment to a valid common law marriage to appellee, until the divorce became final on January 3, 1986. The parties could still have entered a putative marriage, however, during the times that appellee was unaware of the prior marriage or believed it had been terminated. *See Dean,* 480 S.W.2d at 496.

In January 1981 appellee first became aware of appellant's prior marriage. Appellee had knowledge of this impediment for the remainder of the prior marriage, with the exception of a short period in the spring of 1984 when she believed that the marriage had been dissolved by a Mexican divorce. These two periods of the relationship, before January 1981 and during the spring of 1984, provide the potential for a putative marriage. We next look to see if a common law agreement can be found or inferred during either period.

Taking only the evidence favorable to the court's decree, there was cohabitation and holding out to the public from the middle of 1980 to April or May of 1986. This is without real dispute in the evidence, although appellant claims that the holding out was done selectively only to strangers, out of some sort of respect for appellee. Under Texas Family Code § 1.91(b) the agreement to be married may be inferred if cohabitation and holding out to the public are found. *Leal,* 733 S.W.2d at 323. However, an agreement cannot be implied contrary to direct evidence which definitely shows that there was no such agreement. *Rush v. Travelers Insurance Co.,* 347 S.W.2d 758, 760 (Tex.Civ.App.—Texarkana 1961, no writ); *Perales v. Flores,* 147 S.W.2d 974, 975–76 (Tex.Civ.App.—San Antonio 1941, writ ref'd). Direct evidence of an agreement by the parties to present cohabitation and future marriage is insufficient; there must be a present agreement to be married. *Leal,* 733 S.W.2d at 323.

In the present case, appellee admits that the parties talked about the status of their relationship from before the time the court found that they began cohabitation. The nature of their conversations and actions relevant to an agreement about their status are as follows:

January '80—appellant told appellee "that I should always be telling everyone that we were married. Especially the ladies of the tennis club, so that I could be having some respect while, *until we married.*"

Sometime in '80—appellant gave appellee a diamond *engagement ring.*

March '81—A few days after appellee found out that appellant was still married, in January 1981, she went to live with her family in Saltillo, Mexico, for two months. Appellant came down for her, told her that he was in the process of divorcing his wife, and "he said for me to go back *to get married* with him...."

In the following question, appellee's counsel sought to establish an agreement during the period after appellee returned with appellant to Brownsville and while appellant was trying to divorce his wife: "Q. During that period, did he ever tell you that you were to continue, you were to continue together with him because *you were his wife?* A. Yes...."

April '82—on a trip through Mexico appellant and appellee purchased two inscribed rings (Roberto 5–12–82 and Margarita 5–12–82, as was the custom for wedding rings in Mexico) for the following purpose: "Well, [appellant] was always concerned about the social aspect. He asked me to tell everybody, whoever asked me a question on the both that *we had just gotten married.*"

The initial understanding that the parties had in January of 1981 was, in her own words, that appellee was to represent herself as appellant's wife for the purpose of avoiding embarrassment *until* the two got married. This indicates that appellant had the intention to marry appellee in the future, but did not consider himself, or agree to be, married to her at that time or at any time before appellee discovered the prior marriage. There could have been no putative marriage during this period.

The question now becomes whether either of the parties' actions after that time suggest that they later changed their understanding of the relationship and agreed to be married. The engagement ring and proposal to *get married* in March of 1981 still assume a future marriage. However, the exchanging of wedding rings in 1982 and the new affirmation that appellee should tell "everyone ... that we had just gotten married," was some evidence that appellant at that time agreed to be married to appellee. In addition, appellee's testimony that appellant had told her that "[she was] his wife," sometime after the couple returned to Brownsville in 1981, also suggests a present agreement to be married. We find that there is sufficient evidence to show a common law agreement after 1982. If appellee in good faith believed that appellant's divorce had become final in 1984, there would also be sufficient evidence to show a putative marriage after that date.

The good faith of the putative spouse is generally a fact question. *See Davis*, 521 S.W.2d at 606. When the spouse is unaware of a prior undissolved marriage, good faith is presumed. *Whaley*, 377 S.W.2d at 857. However, when the putative spouse is aware that a former marriage existed at one time, the question becomes one of the reasonableness of that party's belief that the former marriage has been dissolved. A putative spouse may believe in good faith that a prior marriage has been dissolved by divorce, even though in the eyes of the law it has not. *See Dean v. Goldwire*, 480 S.W.2d 494 (Tex.Civ.App. —Waco 1972, writ ref'd n.r.e.). In *Dean*,

the putative spouse was shown papers represented to her as a Mexican divorce decree, though they did not effect a divorce. *Id.*, 480 S.W.2d at 495. In the present case, appellee saw a Mexican divorce decree that she believed to be valid in April of 1984. Sometime shortly thereafter, she learned from a phone call appellant received from a Mexican lawyer that the divorce had been set aside by the Mexican courts. However, appellee testified that neither she nor appellant believed this to be true.

The courts of Louisiana have discussed the concept of putative marriage perhaps more extensively than those of any other state. As in Texas, in Louisiana a putative marriage arises when one of the parties enters a void marriage in the good faith belief that no impediment exists. *Succession of Chavis*, 211 La. 313, 29 So.2d 860 (1947). The party's good faith is a question of fact and will not be vitiated by "unconfirmed rumors or mere suspicions ... so long as no certain or authoritative knowledge of some legal impediment comes to him or her." *Id.*, 29 So.2d at 862. When reliable knowledge of an impediment does come to the party, however, he cannot simply declare his disbelief of this information and continue as if it were untrue, but is then under a duty to investigate further: "a party alleging good faith can not close her eyes to information or her ears to suspicious circumstances. She must not act blindly or without reasonable precaution." *Id.*, 29 So.2d at 863; *see also Hunter v. Richardson*, 346 F.Supp. 123, 125 (M.D.La. 1972); *Succession of Theriot*, 185 So.2d 361, 363 (La.Ct.App.1966).

In the present case appellee was no longer acting in good faith after she learned through appellant's lawyer that the Mexican divorce had been set aside. At this point, any putative marriage that may have arisen came to an end. Moreover, we have no evidence to suggest that during the period of time between the initial Mexican decree and appellee's knowledge of its being set aside the parties acquired any of the property now in dispute. For this rea-

son, it is irrelevant whether such a putative marriage temporarily arose.

 Finally, we must determine whether there was sufficient evidence to show that after appellant's divorce in 1986 the parties entered a valid common law marriage. Under Texas Family Code § 2.22, a marriage which was void by reason of a prior marriage becomes valid after the prior marriage is dissolved "if since that time the parties have lived together as husband and wife and represented themselves to others as being married." This provision applies to common law as well as ceremonial marriages. *Braddock v. Taylor,* 592 S.W.2d 40, 42 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.); *Durr v. Newman,* 537 S.W.2d 323, 326 (Tex.Civ. App.—El Paso 1976, writ ref'd n.r.e.). For the reasons discussed above, we find that there was sufficient evidence to show a common law agreement after 1982, and thus to show a common law marriage when the parties continued to cohabitate and hold themselves out as married after appellant's 1986 divorce.

Point one is sustained, but points two and seven are overruled.

In points three through five appellant complains that the trial court erred in awarding certain property to appellee on the basis of a putative or community interest therein. He complains specifically in points three and four about the 25% interests in the $100,000 certificate of deposit and the condominium unit. He complains generally in point five of the award of personal property to the appellee, which includes the personal property and cash in appellee's possession at the time of divorce, the 1986 Volkswagon, and the 25% interests in the vacation time share plan and the 1,500 shares of stock.

 Based on our conclusions in points one, two and seven, there are only two means by which appellee could have acquired title to property owned or purchased by appellant: first, she could gain a community interest in the property accumulated after the January 3, 1986 common law marriage; second, appellant could have made a gift of certain property to her out-

side the context of marriage. The trial court awarded appellee property based on theories of both putative or community property and gift. Appellant, however, attacks only the former in his points of error.

 Since there is no evidence of when or how it was acquired, the personal property and cash in appellee's possession at the time of divorce is presumed to be community property of the common law marriage under Texas Family Code § 5.02 (Vernon Supp.1988). *Cockerham v. Cockerham,* 527 S.W.2d 162, 167 (Tex.1975). The trial court did not abuse its discretion in awarding it to the appellee as community property. Point five is overruled to the extent that it concerns personal property and cash in appellee's possession.

 All the specific items of property in dispute, however, were acquired before the common law marriage, so appellee could not gain a community property interest in them. These items remained the community property of appellant and his former wife until the 1986 divorce gave each a 50% interest in them as separate property.

 In addition to finding these items to be jointly owned property under a putative marriage between the parties, which we now reject, the trial court also found that appellant made a gift to appellee of the 1986 Volkswagon and half of his half-interest in the certificate of deposit, the condominium unit, and the vacation time share plan. Even though these items were community property of the prior marriage, appellant could dispose of his interest in the items belonging to that community as he pleased. *See Jackson v. Smith,* 703 S.W.2d 791, 796 (Tex.App.—Dallas 1985, no writ); *Murphy v. Metropolitan Life Insurance Co.,* 498 S.W.2d 278, 282 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.). Appellant, moreover, does not challenge these gifts or the sufficiency of the evidence to support them. Appellee is thus entitled to the property interests that the trial court awarded her. Points three and four are overruled. Point five is overruled to the extent that it con-

cerns the 1986 Volkswagon and the vacation time share plan.

As for the 1,500 shares of stock, the trial court awarded this item solely on the basis of the putative marriage. The court did not find that the stock was given to appellee and we find no evidence of such a gift. For these reasons, the award of a 25% interest in the stock was error, and to that extent point of error five is sustained.

In point of error six appellant complains that the trial court erred in ordering him to pay, and in holding him in contempt for failure to pay, $3,400 in temporary support to appellee before the existence of the marriage had been judicially established. Appellant, however, has failed to support this point with any argument or authorities in his brief. In addition, appellant has not provided this Court with the temporary support order which he failed to obey or any record of the contempt hearing or contempt order, other than brief mention of such in the divorce decree. A temporary support order is a perfectly legitimate means under Texas Family Code § 3.59 (Vernon Supp.1988), of protecting the welfare of a financially dependent spouse between the time a petition is filed and divorce is granted. The right may be abused in certain cases, but appellant has not provided us with any record or argument sufficient to determine whether an abuse has occurred. Points of error must be supported by the record and failure to provide an adequate record of the matters objected to requires that the points be overruled. *Braugh v. Phillips,* 557 S.W.2d 155, 160 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *see also Ballard v. King,* 652 S.W.2d 767, 769 (Tex.1983); *Jaramillo v. Liberty Mutual Fire Insurance Co.,* 694 S.W.2d 585, 588 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Appellant's sixth point is overruled.

We REVERSE AND RENDER that portion of the trial court's judgment finding a putative marriage before January 3, 1986, and that portion awarding a 25% interest in the 1,500 shares of stock to appellee. The remainder of the judgment is AFFIRMED.