Donald Lee **CARDWELL**, Appellant and Cross–Appellee

v.

Sharon Ann **CARDWELL**, Appellee and Cross–Appellant.

No. 05–04–01791–CV.

Court of Appeals of Texas, Dallas.

June 30, 2006.

George Parker, W. Mark Montgomery, Parker & Montgomery, McKinney, for Appellant.

Bill Boyd, Boyd & Veigel, P.C., McKinney, for Appellee.

Before Justices MORRIS, MOSELEY, and FITZGERALD.

## OPINION

Opinion by Justice FITZGERALD.

This is an appeal, by both parties, from a divorce judgment. Appellant Donald Lee Cardwell ("Husband") challenges two specific trial court rulings concerning the property division ordered in that judgment. Cross–Appellant Sharon Ann Cardwell ("Wife") challenges the trial court's refusal to find the existence of a putative marriage between the parties. For the reasons that follow, we affirm the judgment of the trial court.

## BACKGROUND

Sometime in 1984 or 1985, Wife married a man named Bruce Gay. She left Gay in 1986. In 1988, Wife married Virgil Hill; she divorced Hill in 1992. Then, in 1995, Wife married Husband. Sometime during 1999, Wife learned that she had never been divorced from Gay and informed Husband of that fact. With Husband's assistance, Wife initiated divorce proceedings against Gay at that time; that divorce was final on December 7, 1999. Husband and Wife separated in 2003. Husband initiated this proceeding seeking a divorce, and Wife filed a counter-petition.

In the trial court, Wife argued that she and Husband had a putative marriage from the time of their ceremonial marriage until she was divorced from Gay. The trial court rejected this theory, but concluded the parties did have a common law marriage as of December 7, 1999, when the divorce from Gay was final. The trial court also made a detailed identification and division of the couple's separate and community property.

■ On appeal, Wife challenges the trial court's rulings concerning the putative

marriage. Husband challenges two particular aspects of the property division. A trial court is charged with dividing the estate of the parties in a just and right manner, considering the rights of both parties. TEX. FAM.CODE ANN. § 7.001 (Vernon 1998). We review a trial court's division of property under an abuse of discretion standard. *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex.1981); *LaFrensen v. LaFrensen,* 106 S.W.3d 876, 877 (Tex.App.-Dallas 2003, no pet.).

## EXISTENCE OF A PUTATIVE MARRIAGE

■ In deciding the putative marriage issue, the trial court found:

> there was not a putative marriage because the Respondent did not enter into the marriage in good faith, having been still married to a former husband and making no effort to determine the legal status of that marriage before entering into another marriage.

A putative marriage is one entered into in good faith by at least one party, but invalid because of an existing impediment on the part of one or both parties. *Garduno v. Garduno,* 760 S.W.2d 735, 738 (Tex.App.-Corpus Christi 1988, no writ). If a court determines a putative marriage exists, then the putative spouse who acted in good faith receives the same rights in property that she would have received were she a lawful spouse. *See id.* at 739.[1] The key to the putative-marriage argument is good faith. In her first cross-point, Wife argues there was no evidence that she was actually aware, when she entered into the ceremonial marriage with Husband in 1995, that an impediment existed which prevented her ceremonial marriage to Husband from becoming a valid marriage relation-

---

**1.** Technically, the property acquired during a putative marriage is not community property. Instead, the law treats it as jointly owned separate property. *Garduno,* 760 S.W.2d at 739.

ship. In her second cross-point, Wife argues that no evidence was offered at trial to "rebut the presumption of good faith" surrounding her belief that her marriage to Gay had been dissolved. For these reasons, she argues, she has established that she entered the ceremonial marriage in good faith.

Wife did testify that she was not aware she was still legally married to Gay when she entered into the ceremonial marriage. However, the trial court, as fact-finder, was charged with evaluating Wife's credibility. *See Griffin Indus., Inc. v. Honorable Thirteenth Court of Appeals,* 934 S.W.2d 349, 355 (Tex.1996) ("In a nonjury trial or hearing, the trial court is the sole judge of the witness' credibility and the testimony's weight."). The court was free to disbelieve any or all of Wife's testimony. *See id.* ("The trial court, as the fact-finder, has the right to accept or reject all or any part of any witness' testimony."). Thus, the trial court could have concluded Wife knew she was still legally married to Gay in 1995 and rejected Wife's good-faith argument on that basis alone.

■ Moreover, we disagree with Wife's premise that only actual knowledge of the impediment would defeat the purported putative marriage. When the party arguing for a putative marriage is aware that there was a former marriage, "the question becomes one of the reasonableness of that party's belief that the former marriage has been dissolved." *Garduno,* 760 S.W.2d at 740. In this case, Wife testified that after she left Gay in 1986, she did nothing to initiate divorce proceedings. She testified further that Gay told her he was taking care of the divorce, but she admitted she did nothing to determine whether Gay had done so. Even after going through divorce proceedings following her second marriage, Wife did nothing to determine whether or not she was still married to Gay when she married Husband. We will not disturb the trial court's finding on this matter when Wife's own testimony establishes that she made no reasonable inquiry into her marital status before she purported to enter into another marriage.

We need not address the existence or extent of the presumption Wife depends upon to support her good faith in this case. The same evidence—that is, Wife's own testimony—that allowed the trial court to question the reasonableness of Wife's belief would suffice to rebut any such presumption in this case.

We find no abuse of discretion in the trial court's findings on putative marriage. We overrule Wife's cross-points.

## RIGHT TO REIMBURSEMENT OR ECONOMIC CONTRIBUTION

Husband's first appellate issue relates to a ranch of approximately 120 acres in Melissa, Texas.[2] The trial court concluded the ranch was Husband's separate property, but the court also concluded the community estate had a right to reimbursement for improvements made to the ranch during the course of the common-law marriage.[3] Thus, included in Wife's recovery was a

---

**2.** The record indicates the ranch included 120.4 acres in all. The trial court's award to Husband as separate property was 118 of the approximately 120 acres. However, evidence of the market value of the property was taken in light of the total acreage. We use the figure of 120 acres for purposes of calculations under the family code.

**3.** The trial court's specific finding was that:

the community estate has a right of reimbursement for improvements made to the 118 acre tract found to be the separate property of [Husband] in an amount which exceeds the principal amount of the judgment awarded to Wife.

judgment in the amount of $234,000, "in part for improvements to the separate property of [Husband], and to arrive at a just and right division of community property." The judgment was secured by an equitable lien on the ranch.

Wife pleaded for this recovery under the heading "Reimbursement," and the trial court's ruling found the community estate had a "right of reimbursement." However, under the family code's statutory scheme, which was adopted by the legislature in 1999, Wife's claim would seem to be better characterized as a claim for economic contribution. *See* TEX. FAM.CODE ANN. §§ 3.401–3.410 (Vernon Supp.2005). Pursuant to this statutory scheme:

> A marital estate that makes an economic contribution to property owned by another marital estate has a claim for economic contribution with respect to the benefited estate.

*Id.* § 3.403(a). A claim for economic contribution arises when one marital estate makes capital improvements to the property of another estate. *Id.* 3.402(a)(6). Under the statutory scheme, an estate can still make a claim for reimbursement, as opposed to a claim for economic contribution. But such a claim is limited to (a) two specific, narrow instances,[4] or (b) "a factual circumstance not covered by this subchapter." *Id.* § 3.408(a). We conclude, therefore, that Wife's claim should be governed by the law of economic contribution rather than the law of reimbursement.

We further conclude that (regardless of semantics) the case was tried and decided employing the significant principles of economic contribution. For example, the trial court provided that the Wife's portion of the community's claim was secured by an equitable lien on the separate estate of Husband. *See id.* § 3.406(a). And although we have no details from the court concerning how it computed the community estate's award,[5] so long as the award would have been proper under the principles of economic contribution, we will affirm the trial court's decision.

The record shows Husband purchased the ranch for $240,000, or $2000 per acre. The record also contains evidence that in 2001 (unquestionably during the common-law marriage), more than $155,000 in improvements were made to the ranch. In the absence of clear and convincing evidence to the contrary, we assume the improvements were made with community funds. *Id.* § 3.003. In 2003, after the improvements, the property was appraised at $3000 per acre, for a total value of $360,000. Moreover, Wife testified that, in her opinion, the property was worth as much as $10,000 per acre, for a total value of $1,200,000.

The family code creates a formula for determining the recovery for an economic contribution claim. *See id.* § 3.403(b), (b–1). Pursuant to that formula, Wife's claim would be measured by the following calculation:

$$\frac{\text{Equity in ranch on date of divorce}}{} \times \frac{\text{Contribution by community}}{\text{Contribution by community} + (\text{Net equity in ranch before contribution by community} + \text{Any additional contribution by Husband's separate estate})}$$

4. The code provides claims for reimbursement for (1) payment by one estate of the unsecured liabilities of another estate, and (2) inadequate compensation for the work of a spouse for a business entity controlled by that spouse. *Id.* § 3.408(b).

5. Husband made one request for findings of fact and conclusions of law pursuant to rule 296 of the rules of civil procedure. Neither party specifically requested findings on the calculation of the community estate's contribution award. *See id.* § 6.711(a)(2).

Based on the evidence, the equity in the ranch before contribution by the community would have been $240,000.[6] The equity in the ranch on the date of the divorce would have been either $360,000 or $1,200,000.[7] Thus the award to the community estate on account of its contribution to the ranch would have been either $141,266 or $470,886.[8] The trial judge found that the community's "right of reimbursement" was "an amount which exceeds the principal amount of the judgment awarded to [Wife]"; the principal of that judgment was $234,000. Accordingly, we assume the trial court gave credence to Wife's testimony as to the value of the ranch property. If the trial court awarded Wife approximately half of the community estate's award, or something approaching $235,443, that would account for the entire judgment she received.

However, the trial court had discretion to make equitable adjustments in dividing the community estate, and the trial court's order indicates that Wife's judgment also included such an adjustment. Whether the trial court adjusted the contribution award downward or upward,[9] the judgment awarded Wife is close enough to the calculation of the economic contribution award under the statute that we see no abuse of discretion.

Ample evidence supports the trial court's decision here: we find no abuse of discretion in the trial court's award to the community estate or in Wife's money judgment generally. We decide Husband's first issue against him.

### CHARACTERIZATION OF KANSAS OIL AND GAS VENTURE

■ In his second issue, Husband argues the trial court erroneously characterized a Kansas oil and gas venture as community property rather than as Husband's separate property. Property possessed by either spouse during or on the dissolution of marriage is presumed to be community property; a party claiming such property is his separate property must offer clear and convincing evidence to that effect. TEX. FAM.CODE § 3.003. The only evidence Husband points to in support of this claim is a page generated during discussions of estate planning that lists the venture as an asset. Neither the exhibit nor any testi-

6. There is no evidence in the record that the fair market value of the property had increased from the date of purchase, and there is no evidence of any lawful lien on the property at the time of the improvements to the property. *See id.* § 3.401(3) ("equity" means difference of fair market value of property on specific date and amount of lawful lien specific to property on same date).

7. Again, there was no evidence of lawful liens to offset the fair market value of the property.

8. Application of the family code's formula to the relevant numbers yields two possible results:

$$360,000 \times \frac{155,000}{155,000 + (240,000 + 0)} = 141,266$$

or

$$1,200,000 \times \frac{155,000}{155,000 + (240,000 + 0)} = 470,886$$

9. For example, the evidence indicated Wife would be entering the work force after a significant period of time when she did not work outside the home so she could care for the couple's children. The court could have increased the judgment as an acknowledgment of Wife's reduced earning power.

mony concerning the exhibit establishes when or how this asset was procured. Husband did not meet his burden of proving the venture was his separate property by clear and convincing evidence. *See id.* The trial court did not abuse its discretion in its characterization of the oil and gas venture. Husband's second issue lacks merit.

## CONCLUSION

We have denied both parties' issues on appeal. Accordingly, we affirm the judgment of the trial court.