IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 7, 2011 Session

## WILLIAM ROBERT LINDSLEY v. LISA WHITMAN LINDSLEY

**Appeal from the Circuit Court for Blount County**
**No. E-22576    Jon Kerry Blackwood, Senior Judge**

**No. E2011-00199-COA-R3-CV - Filed February 27, 2012**

William Robert Lindsley ("the plaintiff") filed this action for divorce against Lisa Whitman Lindsley ("the defendant"). The defendant, along with her answer, asserted a counterclaim asking that the marriage be declared void for bigamy predicated upon the fact that the plaintiff was married when he purported to marry her. The plaintiff obtained a divorce from his previous wife before the parties to this action separated. The defendant filed a motion for summary judgment asking that their marriage be declared void. The trial court granted the defendant summary judgment and the plaintiff appealed. In ***Lindsley v. Lindsley***, No. E2008-02525-COA-R3-CV, 2010 WL 2349200 (Tenn. Ct. App. E.S., filed June 11, 2010) ("***Lindsley I***") we held that "under Texas law where [the parties were] married, . . . they could, under the [Texas] statute, enter into a common-law marriage after the spouse was divorced in the prior marriage." ***Id***. at *1. Accordingly, we reversed the trial court upon finding that there was a "disputed issue of fact . . . whether the parties entered into a common-law marriage after the plaintiff's prior marriage ended." ***Id***. We remanded "for a determination of this factual issue." ***Id***. On remand, the trial court heard evidence and held that the plaintiff did not satisfy his burden of showing that the parties' cohabitation established the elements of a common law marriage under Texas law. The plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Brett D. Stokes, Knoxville, Tennessee, for the appellant, William Robert Lindsley.

Damon Wooten, Maryville, Tennessee, for the appellee, Lisa Whitman Lindsley.

**OPINION**

I.

In 1997, the parties lived together in California. While on a trip to Texas, they obtained a marriage license and were "married" in a ceremony officiated by a priest and attended by family and friends. Unbeknownst to the defendant, the plaintiff was still married to his previous wife, Debra Lindsley. Apparently, either the plaintiff or Debra Lindsley had not pursued to conclusion a divorce action that one or the other of them had initiated. After the Texas marriage ceremony, the parties returned immediately to California. In 2003, they learned that the plaintiff's previous marriage had not been dissolved. Thereafter, on or about June 16, 2003, the plaintiff obtained a divorce from Debra Lindsley. The parties continued to cohabit in California until 2007. In 2007 they moved to Tennessee and continued to cohabit until they separated in this state in July 2008. Following the parties' separation, the plaintiff filed this action for divorce.

In *Lindsley I*, we recognized that even though Tennessee law does not permit common-law marriages to be contracted in this state, nor does it allow ratification of such marriages, "if the Lindsleys have contracted a valid common-law marriage in a state that recognizes such marriages, Tennessee Courts will likewise recognize their marriage as valid." *Id*. at * 3. Ultimately, we concluded that California is like Tennessee in that it does not allow common law marriages but that it would also recognize a common law marriage contracted in another state. *Id*. at 5. Thus, the question was whether the parties could have entered a common law marriage under Texas law by their cohabitation in California and Tennessee. *Id*. at 4. We stated:

> Texas law provides that a marriage entered into when one of the
> parties is already married is void. However, if the first marriage
> is later dissolved, the latter marriage may become valid under
> certain circumstances. Tex. Fam. Code Ann. § 6.202 provides
> as follows:
>
> > (a) A marriage is void if entered into when either
> > party has an existing marriage to another person
> > that has not been dissolved by legal action or
> > terminated by the death of the other spouse.
> >
> > (b) The later marriage that is void under this
> > section becomes valid when the prior marriage is
> > dissolved if, after the date of the dissolution, the

-2-

parties have lived together as husband and wife and represented themselves to others as being married.

Texas courts have consistently interpreted Tex. Fam. Code Ann. § 6.202(a) to mean that a marriage is void if entered into when either party has an existing marriage. *However, the later marriage becomes valid when the prior marriage is dissolved if, after the date of the dissolution, the parties have lived together as husband and wife and represented themselves to others as being married.* **Omodele v. Adams**, No. 14-01-00999-CV, 2003 WL 133602 at *3 (Tex. App.- Houston [14 Dist.], Jan. 16, 2003); **Garduno v. Garduno**, 760 S.W.2d 735, 741 (Tex. App.- Corpus Christi 1988). The Texas courts have also held that when a person continues to live with his or her spouse after the spouse's divorce in a previous marriage, a common-law marriage exists that may be the subject of divorce. **Omodele** at * 3 (*citing* **Potter v. Potter**, 342 S.W.2d 800, 801 (Tex. Civ. App.- Dallas 1961, 2003)).

The party seeking to establish the existence of a common law marriage after the impediment to the marriage has been removed bears the burden of proving that the parties continued to co-habitate [sic] as man and wife and held themselves out to others as married after the impediment was removed. **Garduno** at 741; **Rodriguez v. Avalos**, 567 S.W.2d 85, 86 (Tex. Civ. App. 1978). There is no requirement that the parties had to be living in Texas when the impediment was removed but they then lived together and held themselves out to others to be man and wife. **Durr v. Newman**, 537 S.W.2d 323, 326 (Tex. Civ. App. 1976).

Under Tex. Fam. Code Ann. § 6.202(a) the parties' 1997 marriage was void when they entered into it due to Mr. Lindsley's still existing first marriage. When the prior marriage was dissolved in 2003, the impediment to the marriage between the parties was removed and a valid common law marriage came into existence after the date of the dissolution as long as the parties lived together as husband and wife and represented themselves to others as being married. Tex. Fam. Code Ann. § 6.202(b). There is no question that the Lindsleys did not live

-3-

together as husband and wife or hold themselves out to others as married in Texas, but a Texas domicile is not required for Section 6.202(b) to effect a common-law marriage once the impediment is removed. The Trial Court can look to the Lindsleys' behavior in California from 2003 until the time they moved to Tennessee and also to their behavior in Tennessee from 2007 until their separation on July 4, 2008 to determine whether they met the requirements of Section 6.202(b) to establish a common-law marriage. *See **Durr v. Newman*** at 326.

As there is a genuine issue of material fact as to whether the Lindsleys lived as husband and wife and held themselves out to others after plaintiff obtained a divorce [from] his first wife, it is necessary that this case be remanded to the Trial Court for such a determination.

*Lindsley I* at \*3-5 (footnotes omitted; emphasis added).

We have reviewed all of the evidence admitted in the hearing on remand. The trial court's summary of that evidence as reflected in its findings and conclusions filed December 2, 2010, is accurate and will complete the factual and procedural foundation for this appeal:

The Court must look to the conduct of the parties after . . .[the plaintiff's] prior marriage . . . [was] dissolved. According to the testimony, [the plaintiff] was in financial difficulties with the IRS and was attempting to determine the child support payments he had made during his prior marriage when he learned that the marriage had not been dissolved. [The defendant] testified that at that time she considered that she was in a bigamous relationship and did not consider [the plaintiff] as her husband. Consequently, the parties began legal proceedings in California to dissolve [the plaintiff's] prior marriage. Prior to 2003, the parties had filed joint tax returns. After 2003, [the defendant] filed tax returns as head of household. She also amended her previous tax returns to reflect this status. The parties continued to live together, but [the defendant] considered that they were domestic partners, not husband and wife. When [the plaintiff's] health insurance elapsed, [the defendant] had [the plaintiff] added to her health insurance policy as spouse, but explained that she had discussed the living arrangement with her employer

-4-

and that his relationship was as a domestic partner. The parties continued to reside in California and to cohabit. [The defendant] also testified that she repeatedly requested of [the plaintiff] that they undertake a ceremonial marriage, but he declined. During their period of cohabitation, . . . the parties maintained their separate financial arrangements. At times [the plaintiff] would contribute to car payments and [the defendant] would provide financial assistance to [the plaintiff's] business. [The plaintiff] was in financial trouble for a period of time and [the defendant] acted in a manner to protect herself from his financial plight. Very little evidence was introduced to explain the day-to-day living financial arrangements between the parties . . . . The parties took "family vacations" periodically in which their child and [the plaintiff's] child from the previous marriage attended. There was no evidence except from the parties about how the parties held themselves out in California and from [the defendant's] conduct concerning the parties' legal obligations in California after learning of the prior existing marriage and that [the defendant] was concerned about insulating herself from any financial liability she might incur with the IRS because of the parties' arrangement. Once the parties moved to Tennessee, she purchased real estate in her own name and operated businesses without the involvement of [the plaintiff]. When [the plaintiff] encountered financial difficulty in Tennessee, [the defendant] loaned him Forty Thousand Dollars. However, this transaction was evidenced by a promissory note with collateral. This promissory note was listed as a debt by [the plaintiff] . . . in his Petition for Bankruptcy that he filed in December 2008. Also, in this Petition he swore under oath that he was unmarried, which is in complete contradiction to his position that the parties were married. [The defendant] did seek and obtain an Order of Protection in which she listed [the plaintiff] as husband. However, later in that document she explained that the parties' ceremonial marriage occurred during the time that [the plaintiff] was still married. The only evidence of "holding out" was an email wherein [the defendant] referred to "hubbie," and an electrician's testimony that both parties referred to each other as husband and wife.

In reviewing the testimony, the Court finds that [the defendant's] testimony is the more credible and is supported by her conduct after she learned that [the plaintiff's] prior marriage had not been dissolved. After this discovery, she maintained that the parties were not married. She co-operated [sic] with legal counsel to take the steps necessary to dissolve [the plaintiff's] prior marriage. However, she recognized that she did not wish to expose herself to any liability as a result of the mistaken impression that she was married. She amended her tax returns that were filed before her discovery of the prior marriage so that her proper status would be consistent to her true status. Thereafter, she filed tax returns as "head of household" rather than a joint return. When the parties moved to Tennessee, she purchased property and operated businesses in her own name. When [the plaintiff] needed money for his business, she required that he execute a promissory note with collateral. Finally, she repeatedly asked [the plaintiff] to engage in a valid marriage ceremony for which he declined. The mere fact that the parties were introduced as husband and wife is not sufficient to establish a common law marriage. More importantly, it is clear to the Court that after discovery of the undissolved marriage, the record does not support that there was a present agreement to be husband and wife. The parties may have continued to cohabit, but the Court finds that [the defendant] consistently believed they were not husband and wife unless and until a valid ceremony was conducted. The Court finds that there was no mutual agreement between the parties to be married.

[The plaintiff] bears the burden to prove the existence of a valid common law marriage. The Court finds that he has failed to meet this burden and this Complaint for Divorce is dismissed with costs assessed against [the plaintiff].

The trial court entered an order declaring the marriage null and void ab initio because "the parties did not hold themselves out to be married and . . . there was no mutual agreement between the parties to be married." The plaintiff filed this appeal.

II.

We have restated the issues the plaintiff attempts to raise as follows:

-6-

Whether the court violated our instructions in *Lindsley 1* on remand.

Whether the trial court erred in holding that the marriage was void ab initio.

Whether the defendant has committed fraud on the court by perjury that should result in entry of a judgment in favor of the plaintiff.

Whether the evidence preponderates against the trial court's findings.

## III.

In a case tried without a jury, we review the trial court's findings of facts de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010). Conclusions of law are reviewed de novo with no presumption of correctness. *Id*.

## IV.

The plaintiff argues that the trial court violated our instructions on remand in *Lindsley I* by requiring that, during the cohabitation, there be a "mutual agreement between the parties to be married." In *Lindsley I* we looked to *Durr v. Newman*, 537 S.W.2d 323, 326 (Tex. Civ. App. 1976) for the standard, under Texas law, to establish a common-law marriage by ratification after removal of the impediment of bigamy. *Durr* clearly holds that the acts that amount to ratification do not have to take place in the state of Texas. The appellant in *Durr* also argued that ratification cannot occur unless there is proven a new agreement to be married. The *Durr* court rejected the argument stating that the statute, now Tex. Fam. Code Ann. § 6.202(b), imposes a tacit agreement upon "parties [who continue to] live together as husband and wife and represent themselves to others as being married." *Id*. at 326. The trial court on remand in the present case stated that the requirements are "a present agreement to be husband and wife; living together as husband and wife; and holding each other out to the public as such." *Garduno v. Garduno*, 760 S.W.2d 735, 741 (Tex. App. Corpus Christi 1988). It is true that the *Garduno* lists the same three requirements as the "elements of a common law marriage." *Id*. at 738. However, at the point in the *Garduno* opinion where the court considered the concept of ratification under the statute, it went on to state, in complete accord with *Durr*, that the void marriage becomes valid if, after removal of the

-7-

impediment, "the parties have lived together as husband and wife and represented themselves to others as being married." *Garduno*, 760 S.W.2d at 741.

Thus, we agree with the plaintiff that, in alluding to the concept of a present intent to be married, the trial court imposed an element that is not required by Texas law under the facts of this case. We do not agree with the plaintiff that the trial court simply disregarded our opinion or that reversal is required. We cited the *Garduno* opinion in *Lindsley I*. We are convinced that the trial court attempted on remand to follow the law we cited but mistakenly looked to language in *Garduno* that does not directly apply to ratification after removal of an impediment. Nevertheless, the trial court did, *also*, consider the part of *Garduno* that is pertinent, *i.e.*, whether the parties lived together and held themselves out as married after removal of the impediment. We are instructed by Tenn. R. App. P. 36(b) that we are not to set aside a final judgment unless "considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." The trial court also found that "the parties did not hold themselves out to be married." For reasons we will more fully explain later in this opinion, we conclude that the evidence does not preponderate against the trial court's finding that the parties did not hold themselves out as married. Accordingly, we hold that the error of requiring a present agreement to be married did not affect the judgment. The court, despite the error, reached the correct conclusion.

The plaintiff also argues that the trial court erred in declaring the marriage void from the beginning. He suggests that such a finding is inconsistent with both the Texas statute, § 6.202, and our holding in *Lindsley I*. We disagree on both points. The statute expressly states that a bigamous "marriage is void." It later states that the "marriage that is void" may become valid if certain conditions are met. Those conditions were not met in this present case as the trial court found. In *Lindsley I*, we stated that, under the Texas statute, "the parties' 1997 marriage was void," but could, depending on the proof on remand, possibly become a marriage by virtue of the parties actions after 2003. *Id*. at *6.

To keep this from being a purely academic question, the plaintiff suggests that the Texas statute of limitations for declaring a marriage void is one year from the date of the marriage, citing, Tex. Fam. Code Ann. § 6.109(b). Presumably, if we agreed with the plaintiff that the marriage was voidable, and not void, we would need to consider whether the defendant waited too long to challenge the status of the marriage. We stress the fact that the marriage was void under Texas, and therefore had no legal effect in Tennessee, as found by the trial court. Thus, we do not agree with the plaintiff's proposition underlying the need to look at the Texas statute of limitations.

However, even if we were to treat the marriage as merely voidable, we do not agree with the plaintiff that the statute of limitations he relies on is applicable. By its express terms, § 6.109 is limited to a narrow set of facts: (1) one party to the marriage obtained a divorce from a third party within 30 days of the marriage ceremony; (2) the offended spouse did not know or have reasonable basis to know of the divorce; and (3) the offended spouse discontinued cohabitation upon learning of the recent divorce. Under such an unusual set of facts, the offended spouse may seek to void or annul the marriage under Texas law, but must do so within one year of the date of the marriage. *Id*. § 6.109(b). It is undisputed in the present case that the plaintiff did not obtain a divorce within 30 days of marrying the defendant and it is also undisputed that the defendant did not even learn the plaintiff was still married to another woman until 2003. Thus, we find no merit in the plaintiff's contention that the defendant waited too long to challenge the marriage.

The two remaining issues both involve the defendants' credibility and should be discussed together. The trial court specifically found that the defendant's "testimony is the more credible and is supported by her conduct after she learned that [the plaintiff's] prior marriage had not been dissolved." We cannot stress this finding too highly because "[i]n a case tried without a jury, the question of credibility of the witnesses is exclusively for the trial judge . . . ." *Harwell v. Harwell*, 612 S.W.2d 182, 184 (Tenn. Ct. App. 1980). Further, "on an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary." *Givler v. Givler*, 964 S.W.2d 902, 905 (Tenn. Ct. App. 1997) (*quoting Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974)).

The plaintiff acknowledges the above principles, but tries to do indirectly what he cannot do directly by arguing that the defendant perjured herself and that, in light of the defendant's perjury, the evidence preponderates against the trial courts finding of fact that the parties did not hold themselves out as married. In our opinion, the alleged perjury is nothing but a fabrication of the zealousness with which the plaintiff advances his position.

The point most strenuously argued by the plaintiff is that the defendant denied ever holding herself out as the plaintiff's wife, and him as her husband, in responding to a request to admit, yet, admitted at the hearing, "There are times in my past I have held myself out to be his wife." The context of the testimony makes it clear that the defendant readily admitted that she thought she was married and acted like she was married *until* the prior undissolved marriage was revealed and after that she thought she was not married and did not hold herself out as married.

The plaintiff also points to an insurance application wherein the defendant referred to the plaintiff as her spouse. We are unable to locate the insurance application in the record. The defendant testified without objection that she listed the plaintiff as her spouse only after discussing the true status with her employer. It was her understanding, based on the policies of her employer, that for the purposes of the application an unmarried partner was treated as a spouse. The plaintiff argues that the defendant's perjury, in denying she held the plaintiff out as her husband, is revealed in a petition for order of protection wherein she listed him as "husband." However, paragraph 6 on page 2 of the same petition provides additional context which makes her statements on the petition consistent with her testimony at the hearing: "Respondent married petitioner while he was still married to his former wife, without petitioner's knowledge."

The plaintiff also argues that the defendant must be lying because her testimony is at odds with his. We do not find the plaintiff's reliance on his own testimony convincing. As the trial court noted, the plaintiff listed himself as single in his bankruptcy petition. Further, the trial court had the opportunity to observe the demeanor of both parties and found the defendant to be the more credible of the two and consistent with the parties' actions in listing themselves as unmarried when acquiring property and filing numerous public documents.

Finally, the plaintiff points us to the testimony of an electrician who did some work where the parties resided and testified that they referred to each other as husband and wife. It is clear, however, under Texas law that "occasional introductions as husband and wife do not establish the element of holding out." *Winfield v. Renfro*, 821 S.W.2d 640, 651 (Tex. App. 1991).

In summary, we have considered the plaintiff's arguments related to alleged perjury and the preponderance of the evidence and find no merit in them. We do not find any inconsistency in the defendant's testimony, much less intentional false testimony. We hold that the evidence does not preponderate against the trial court's findings.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, William Robert Lindsley. This case is remanded, pursuant to applicable law, for collection of costs.

_____
CHARLES D. SUSANO, JR., JUDGE