**Jo Ann SMALL, Appellant,**

v.

**Aldean HARPER, Appellee.**

**No. 18156.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 18, 1982.

Rehearing Denied April 15, 1982.

Mae Nacol, Houston, for appellant.

Lois Watson, Houston, for appellee.

Before SMITH, BASS and DYESS, JJ.

DYESS, Justice.

This is an appeal from a summary judgment. The appellant, Jo Ann Small, brought this suit against Aldean Harper, to recover her claimed portions of lands and other property acquired over a period of at least 12, and possibly 15 years. The main theory of recovery is an alleged breach of an oral partnership, whereby the appellant claims that she and the appellee agreed to commingle their resources and assets, to invest in real estate and other property, and to share the profits between themselves.

Alternatively, the appellant characterizes the transactions as joint ventures, claiming, in a manner similar to her assertions under the breach of partnership theory, that she is entitled to her share of the benefits from the joint ventures and, in that connection, to an accounting and partition. A second alternative theory of recovery requests that a resulting trust or constructive trust be imposed to protect the appellant's interests in the investments.

After the initial round of pleadings was filed and depositions of the parties had been taken, the appellee moved for summary judgment, which the court granted and entered on May 28, 1981. On May 26, 1981, *the date on which the appellee's motion for summary judgment was heard,* the appellant filed a "Motion in Opposition To Summary Judgment" with an attached affidavit.

In *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex. 1979), the summary judgment procedure in this State, under Rule 166–A as amended (January 1, 1978), received a clear analysis and explanation.

With the guiding light of *Clear Creek Basin Authority* as our beacon, we examine the appellee's (movant's) summary judgment proof to determine its legal sufficiency. Has the appellee established her entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all the essential elements of her defense as a matter of law? See *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). We conclude that the appellee did not prove all the essential elements of her defense and that her own summary judgment evidence, plus the appellant's pleadings and evidence in support of those pleadings raised questions that would prohibit the granting of summary judgment.

Looking to the appellant's allegations in both the original petition and the response to the motion for summary judgment, the appellant claims that she and the appellee entered into an oral agreement specifically to purchase a single family residence for the sum of $17,360.00. It was agreed that all costs of the transaction would be shared by the women. The title to the property, however, was to be placed only in the appellee's name "for the purpose of convenience," not as an indication that the appellee was sole owner of the property. The pleadings also listed other property owned jointly by the women and alleged that the appellant had been wrongfully excluded from these properties, as well as from other partnership assets. In the alternative, the appellant alleged that a series of joint ventures were entered into. The pleadings concluded by requesting that a constructive trust be imposed on the property, if the court did not find a partnership or joint ventures, that the appellee be prevented from transferring any funds from the assets, and that, at the very least, an accounting be made.

The appellee offered as summary judgment evidence certain portions of the appellant's sworn deposition testimony as follows: (Emphasis by appellee)

Jo Ann Small: . . . "And in a matter of a few months we became homosexual lovers and we continued as such until I separated from my husband in July of 1965. . .

. . . And we lived together in that lover relationship from that time on. . .

. . . I refer to it as a *marriage*-type relationship. . . (Emphasis supplied.)

. . . In our relationship the division of labor was housework, cooking, yard keeping, et cetera. Her job was to manage our money. She did all of the bill paying, the bookkeeping, the investing, and so on. When I, for example, would receive a paycheck, I would endorse it and hand it over to her. And thus my ignorance about income other than my own.

. . . we were considering it a mate relationship.

. . . I played the role of her lover and her mate.

. . . I had always viewed our relationship just as a *marriage,* as both of us had. We both used that word many times. (Emphasis supplied.)

Q: And that you wanted half of everything?

Jo Ann Small: I believe I did not use that word. I believe that I said an "equitable settlement."

Q: Based upon your relationship with Miss Harper?

Jo Ann Small: Yes.

Q: And that is your homosexual relationship with her?

Jo Ann Small: That was on the basis of a full and complete sharing of all that we had. It would have made no difference whether I had more income or she had more income. The way we operated was together and this was our intent, to continue doing so.

Q: Well, you have already characterized your relationship with Miss Harper. You have said it was a homosexual relationship. You have said in your pleadings that the two of you formed a partnership for profit. When did that take place?

Jo Ann Small: *A partnership for profit I presume would refer to the fact that we agreed that we would live together,* and that we would accumulate together; and always the goal at the end was a comfortable retirement, and we were always talking about details of that. We had even discussed—in view of her earlier retirement, for example, one thing that we talked about was delicacies and kind of restaurant on Highway 290, because that was a market need in that area. We talked about the home we would build to live in as a retirement home. . .

Q: My question is: When did this partnership for profit commence? What were those circumstances?

Jo Ann Small: Well, I felt that I was describing that to you just now.

Q: I meant when.

Jo Ann Small: From the beginning of our personal relationship.

Q: And what was the agreement between you and Miss Harper as to the contribution of assets to this personal partnership for profit?

Jo Ann Small: *We had no agreement about that.* We were all—we were both working under the *assumption* that all that either of us earned or could make from investments together or from whatever source would go into a common fund from which we operate. (Emphasis supplied.)

Q: Did that include real estate?

Jo Ann Small: Surely.

Q: You have referred to this relationship as a marriage and you have referred to your property as common property. Your claim to what is on hand or was on hand at the time you separated is based as though it were a marriage recognized by law? Is that right?

Jo Ann Small: Such a marriage is not recognized by law.

Q: As though it were recognized by law?

Jo Ann Small: No.

Q: Well, tell me again why it is that you claim half of this property.

Jo Ann Small: It was a personal, emotional commitment. It was an economical commitment. It was a life commitment. We did all things together. We took care of each other. We bought together.

We planned together for the future. We did all of the things that a *married couple* would do with respect to money and everything else except, obviously not—we were *unable to do the legal things,* like income tax. (Emphasis supplied.)

The quoted portions, supra, of the appellant's deposition testimony, constitute all of the evidence offered by the appellee at the hearing on her motion for summary judgment. We consider it only fair to note that in the appellee's quoting of the appellant's offered deposition testimony there is a significant omission apparent in line 15 as follows and as underlined by the writer:

Q: Well, you have already characterized your relationship with Miss Harper. You have said it was a homosexual relationship. You have said in your pleadings that the two of you formed a partnership for profit. When did that take place?

Jo Ann Small: A partnership for profit I presume would refer to the fact that we agreed that we would live together, *and that we would invest together,* and that we would accumulate together; . . .

■ Leaving any possible legal consequences of the homosexual and/or lesbian portion of the relationship aside for the moment, the controlling question is whether the offered portions of the appellant's deposition raise any fact issue or issues supportive of any one of the appellant's alternative theories of recovery as pleaded. In our opinion, the deposition testimony raised a number of issues regarding the women's business affairs. It raised the issue of whether they combined funds to invest in stocks with the expectation of sharing the proceeds jointly; it raised the issue of whether they pooled their assets to purchase other items, such as property and personalty; and finally, it raised the issue of whether they commingled their incomes to achieve monetary gains. Summary judgment should have been denied unless the public policy of Texas requires a different result under the particular facts of this case.

While the lesbian relationship of the parties, if such it be as described by the appellant, could present this court with a novel question—i.e. the property rights of heterosexuals vis-a-vis the property rights of homosexuals—it is our opinion that such question is not controlling in the instant case because of the way contributions of work and capital were made and because of the way properties were jointly acquired, generally, but not always, in the names of both of the parties. We come now as squarely to grips with the homosexual and/or lesbian aspects of this case as our judicial needs require.

Fortunately, for our guidance, the Supreme Court of Texas, in the early case of *Hayworth v. Williams,* 102 Tex. 308, 116

S.W. 43 (1909) addressed this issue, deciding whether Margreth Williams, notwithstanding the invalidity of her marriage, would be entitled to an interest in the property involved in the case because she contributed to its acquisition.

In order for the significance of this question to be appreciated, and in order that the Supreme Court's answer be understood, the factual background of the case should be summarized.

In 1859, Margreth Williams "entered into a marriage, in form," with a man named Thomas Jefferson, whom she knew was married to another woman. The two moved from Pennsylvania to New Orleans, and then, a few years later, to the property in question, deeded to Jefferson for cash consideration. Margreth and their children remained on the land, ". . . cultivating the same and improving it by building fences, etc.," but Jefferson returned to New Orleans after only a few months, returning to the land only periodically. In fact, sometimes he would be gone for a "number of years" before showing up for a brief visit. During this time, Margreth claimed the land as her own, and claimed also to be the wife of Jefferson. The suit before the court was brought in 1905 by Jefferson for the purpose of recovering the land. *Id.*, 116 S.W. at 44–45.

With the above factual background before it, the court decided that Margreth Williams' right in the property was a question of fact to be submitted to the jury. If she could show that the money used to buy the land was acquired in whole or in part by her labor with Jefferson before the land was purchased, she would be entitled to a share of the land in the same proportion that her labor contributed to the purchase money.

The court pointed out that Margreth Williams need not ". . . prove that she produced by her labor a part of the very money that was used in purchasing the land."

If she and Jefferson were working together to a common purpose, and the proceeds of labor performed by them became the joint property of the two, then she would occupy the position that a man would have occupied in relation to Jefferson under the same circumstances; each would own the property acquired in proportion to the value of his labor contributed to the acquisition of it.

We note also that in *Cluck v. Sheets,* 141 Tex. 219, 171 S.W.2d 860 (1943), the Supreme Court recognized a like rule, investing title to property in a woman who lived with a man and accumulated real property in conjunction with him *without the parties ever entering into either a ceremonial, commonlaw or putative marriage.* See also *Lovell v. Lovell,* 202 S.W.2d 291 (Tex. Civ. App. 1947, no writ); Texas Law Review 725.

■ Based on the above explanations, we hold that there are no public policy considerations of the State of Texas that would prevent the appellant from recovering on the claims she has made.

We have decided thus far that the appellee did not prove all the elements of her defense as a matter of law, that fact issues were raised in the appellee's summary judgment evidence, and that public policy considerations are not a bar to recovery by the appellant. However, should any doubt remain regarding the adequacy of this evidence to raise fact issues, we will discuss additional evidence that we hold was before the trial court. As mentioned earlier, the appellant submitted both a motion in opposition to the motion for summary judgment and a sworn affidavit. The appellee takes the position that these items were not considered by the court in entering its judgment because they were filed the day of the summary judgment hearing, without prior permission of the court being obtained.

■ We are of the opinion that the trial court, in the exercise of his discretion, had the power to permit the late filing and to consider the plaintiff's motion in opposition and the plaintiff's affidavit as evidence in opposition to the defendant's motion for summary judgment; *Metze v. Entman,* 584 S.W.2d 512 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ); *Majestic Building*

*Corp. v. McClelland,* 559 S.W.2d 883 (Tex. Civ.App.—Houston [1st Dist.] 1977, no writ). So the question presents itself: Did the trial court consider the plaintiff's motion in opposition to defendant's motion for summary judgment and the affidavit of the plaintiff attached to such motion in opposition? In this case, the plaintiff filed her motion in opposition and her affidavit with the clerk of the trial court. There is no indication in the record that leave of court was requested or obtained to file the instruments. The defendant, however, made no motion to strike either the motion in opposition or the affidavit on the ground of the untimely filing. This identical situation confronted the Fourteenth Court of Civil Appeals in *Metze, supra,* and the court looked to the recitations in the judgment to determine whether or not the defendant's affidavit in that case had been considered. The judgment in that case recited in a very precise manner the specific proof considered and such recitation did not include the defendant's affidavit. Thus, the Court of Civil Appeals concluded that the trial court had not considered the defendant's affidavit.

Following this same *Metze* approach in the case at bar, we find that the judgment has the following recitation:

> ... Plaintiff and Defendant appeared at the hearing by and through their respective attorneys of record. The Court having heard and considered said Motion and *having considered all of the pleadings and summary judgment evidence adduced in support of and in opposition to said Motion* and all other papers on file herein; ... (Emphasis added.)

Rather than being specific like the judgment in *Metze,* the judgment in this case is quite general and all encompassing. From the foregoing emphasized language, we conclude that the trial court did consider the appellant's summary judgment evidence adduced in opposition to the defendant's motion for summary judgment. Therefore, we now look to the plaintiff's Motion in Opposition and plaintiff's affidavit attached thereto and find the following additional summary judgment evidence:

## AFFIDAVIT

During 1967 the Defendant, ALDEAN HARPER, and I entered into an oral agreement to become partners. We agreed to combine our personal property and real property; and to invest said combined estate, together with further income and earnings that each of us should thereafter acquire, from whatever source, in corporate stocks, savings accounts, bonds, realty, personalty and other divers assets. We further agreed to devote our talents and energies in the management and conservation of said combined assets with the goal of furthering our partnership purpose which was to increase the net worth of our combined estate. We further agreed that ALDEAN HARPER and myself would share equally and fully in the said combined assets which were the basis of our partnership property and in any increase in net worth occurring during the course of the partnership. We also agreed to participate equally in any liabilities incurred by partnership activity. The partnership between ALDEAN HARPER and myself lasted approximately 12 years. In December, 1978, numerous differences arose between ALDEAN HARPER and myself and we mutually agreed to terminate and dissolve said partnership. The termination and dissolution occurred in December, 1978. Since that time, ALDEAN HARPER has excluded me from participation in the assets which were devoted to the partnership at the time of its creation and also has excluded me from participation in the assets acquired during the course of the partnership. In short, ALDEAN HARPER has wrongfully excluded me from my 50% share of the net worth of the partnership at the time of its dissolution, which dissolution occurred in 1978. At that time I also demanded an accounting from ALDEAN HARPER, but she has to date refused to provide any accounting whatsoever. Defendant Harper has withdrawn certain assets from our partnership accounts, concealed them,

and otherwise attempted to defraud and deprive myself of my 50% ownership, possession and enjoyment of them, all in derogation of the terms of our agreement.

During the course of our agreement, in addition to numerous items of personalty, at least the following parcels of realty were acquired:

1. A single family residence at 7030 Triola, being located on Lot 28, Block 27, Sharpstown, Section 2, Houston, Harris County, Texas.

2. A single family residence situated on a tract legally described as Lots 11, 12, and 13, Spring Creek Estates, Section 2, Montgomery County, Texas.

3. A vacant lot legally described as Lot 27, Block 1, Oak Ridge Estates, Section 1, Waller County, Texas.

4. A vacant lot legally described as Lot 2, Block 2, Forgotten Forest, Section 1, Walker County, Texas.

All of the above described realty was acquired and titled in the name of both ALDEAN HARPER and myself, with the exception of Triola, which was acquired by Ms. Harper and myself pursuant to our oral agreement but which was titled in ALDEAN HARPER'S name for reasons of convenience. In accord with our partnership agreement, all items of personalty and realty acquired during the duration of our partnership relationship over the years 1967 to 1978 were acquired by and through the shared and comingled incomes, property, labor and expertise of both ALDEAN HARPER and myself. In addition, all expenses in connection with said properties, in particular Triola, including but not limited to acquisition costs, construction, improvements, and maintenance costs, taxes, insurance and payments on the bank notes, were shared between Ms. Harper and myself, again in accord with our agreement.

The relationship between Ms. Harper and myself over the years 1967 thru December 1978 was an extremely close and confidential relationship wherein there was a common enterprise and community of interests. Ms. Harper and I shared everything on an equal basis, including, but not limited to, our property of whatever nature wheresoever situated, our time, our labors, our skill and expertise, and our families and friends. I trusted and relied upon Ms. Harper and she has betrayed my trust and reliance in an effort to defraud me of my rightful share of our partnership assets.

I know that I have suffered damages, by reason of Ms. Harper's wrongful failure and refusal to give me my rightful share of our partnership assets, in excess of the amount of the monetary jurisdiction of this Honorable Court.

\*  \*  \*  \*  \*  \*

Ms. Harper did enter into a partnership with me as I have stated herein. Ms. Harper did, and continues to, attempt to defraud me of my rightful share of partnership assets. Ms. Harper did refuse my request for my rightful share of said assets, when I demanded same upon the termination or our partnership in December, 1978. Ms. Harper did refuse to provide me an accounting when I requested same in December, 1978. Ms. Harper is incorrect when she states that she knows of no facts which would serve as a basis for my claim as set forth in my petition and in this Affidavit.

We hold that summary judgment should have been denied to the appellee, not only because the grounds expressly presented to the trial court by movant's motion were insufficient as a matter of law to support summary judgment, but also because the non-movant's motion demonstrated that there were genuine issues, as to material facts, requiring resolution upon a trial of the case.

We reverse the judgment of the trial court and remand the case for a new trial.