COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO.
2-07-134-CV

 

 

MARY AYALA                                                                     APPELLANT

 

                                                      V.

 

MARGO VALDERAS                                                                APPELLEE

 

                                                  ------------

 

              FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                                  ------------

 

                                  MEMORANDUM OPINION[1]

 

                                                  ------------

I.  INTRODUCTION








This is a conversion case.  Appellant Mary Ayala appeals from a jury
verdict and judgment in favor of Appellee Margo Valderas.  In three issues, Ayala argues that the trial
court erred by denying her motion for judgment notwithstanding the verdict
because there is no evidence to show that Valderas had ownership or a right of
ownership in certain property and by denying her motion for new trial because
there is insufficient evidence to show that Valderas had an ownership interest
in the property and to support the jury=s award
of actual damages.  We will reverse and
remand.

II.  FACTUAL
AND PROCEDURAL BACKGROUND

Valderas met Antonio Valderas in 1974.  With the exception of at least one one-month
separation, Valderas and Antonio had a Apretty
stable relationship@ from 1974 to 2003, living
together part of the time in Texas and part of the time in Illinois.  They had three children during their relationship,
but they never married.  Valderas changed
her last name from Rosales to Valderas in either late 1974 or early 1975.

Antonio told Valderas that he was divorced and
that he had one child. Valderas, however, later learned that Antonio had three
children and that he had married a woman in 1967 and never divorced her.  Valderas first heard that Antonio was married
either in 1974 or 1975 or sometime around 1990. 
She opined that she and Antonio were common law married.








Over the course of the relationship, Valderas had
paychecks directly deposited into Antonio=s
checking account, she and Antonio filed joint tax returns marked AMarried,@ they
paid bills Atogether,@ and
they lived together as Ahusband and wife.@  Antonio=s
sister, Ayala, however, did not recognize Valderas as her sister-in-law, nor
did she consider Valderas and Antonio to be a Acouple@ because
she knew that Antonio was married to someone else.

Antonio became very ill in 2002.  Valderas moved out of the residence located
on Bronco Trail in November 2003, but she and Antonio continued to have a close
relationship.  Antonio was hospitalized
in March 2004.  During his
hospitalization, Ayala locked Valderas out of the Bronco Trail residence.
Valderas was unable to retrieve any of the items that she claimed were hers
from inside of the residence.[2]

Antonio died in August 2004.  Valderas learned in June or July 2004 that
Antonio had a will that named Ayala his personal representative and, with the
exception of $1 to each of his children, his sole beneficiary.  At the time of trial, Ayala had not probated
the will because she thought that she only had to dispose of the property as
the will directed her to do.








Valderas sued Ayala for conversion and breach of
contract in May 2005.  She demanded the
return of claimed converted property or damages in the amount of $41,359.00,
which included $3,299.00 that she paid for Antonio=s
funeral expenses.  At trial, Valderas
testified about a AList of Claims@
containing numerous items from the Bronco Trail residence that she contended
were hers because of her relationship with Antonio.  Ayala testified that some of the items were
sold at a garage sale or returned to family in Illinois and that some items
were not at the Bronco Trail residence. 
The jury found that Ayala committed Atheft/conversion,@ and it
awarded damages to Valderas in the amount of $33,060.00.

Ayala filed a motion for judgment notwithstanding
the verdict challenging the legal sufficiency of the jury=s
implied finding that Valderas owned or possessed the converted property.  Ayala also filed a motion for new trial
challenging the factual sufficiency of the evidence to support Valderas=s
ownership or possession of the property and the amount of damages.  The trial court denied both motions, and it
entered judgment awarding Valderas $33,000.00 on her conversion claim.  This appeal followed.[3]

III.  STANDARDS
OF REVIEW








We may sustain a legal sufficiency challenge only
when (1) the record discloses a complete absence of evidence of a vital fact;
(2) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence
establishes conclusively the opposite of a vital fact.  Uniroyal Goodrich Tire Co. v. Martinez,
977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, ANo Evidence@ and AInsufficient
Evidence@ Points of Error, 38
Tex. L. Rev. 361, 362B63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable fact-finder could and
disregard evidence contrary to the finding unless a reasonable fact-finder
could not.  City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is
legally sufficient to support the finding. 
Cont=l Coffee Prods. Co. v. Cazarez, 937
S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby, 935 S.W.2d 114, 118
(Tex. 1996).  More than a scintilla of
evidence exists if the evidence furnishes some reasonable basis for differing conclusions
by reasonable minds about the existence of a vital fact.  Rocor Int=l, Inc.
v. Nat=l Union Fire Ins. Co., 77
S.W.3d 253, 262 (Tex. 2002).








An assertion that the evidence is factually
insufficient to support a fact finding means that the evidence supporting the
finding is so weak or the evidence to the contrary is so overwhelming that the
answer should be set aside and a new trial ordered.  Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).  We are required to consider
all of the evidence in the case in making this determination, not just the
evidence that supports the finding.  Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406B07
(Tex.), cert. denied, 525 U.S. 1017 (1998).

IV.  OWNERSHIP
OR POSSESSION

In her first issue, Ayala argues that the trial
court erred by denying her motion for judgment notwithstanding the verdict
because there is no evidence that Valderas had ownership or a right of
ownership interest in the converted property or that Ayala exercised wrongful
dominion or control over Valderas=s
property.  In her second issue, Ayala
challenges the factual sufficiency of the evidence to support the jury=s
implied ownership finding.








Conversion is the wrongful assumption and
exercise of dominion and control over the personal property of another to the
exclusion of, or inconsistent with, the owner=s
rights.  Waisath v. Lack=s
Stores, Inc., 474 S.W.2d 444, 447 (Tex. 1971).  Conversion is concerned with possession and
not title.  Carpenters Local Union No.
1266 v. Tex. State Fed=n of
Labor Bldg. Ass=n, 288
S.W.2d 874, 877 (Tex. Civ. App.CAustin
1956, writ ref=d n.r.e.).  To establish conversion of personal property,
a plaintiff must prove that (1) she owned or had legal possession of the
property or entitlement to possession; (2) the defendant unlawfully and without
authorization assumed and exercised dominion and control over the property to
the exclusion of, or inconsistent with, the plaintiff=s rights
as an owner; (3) the plaintiff demanded return of the property; and (4) the
defendant refused to return the property. 
Augillard v. Madura, 257 S.W.3d 494, 500 (Tex. App.CAustin
2008, no pet.); Burns v. Rhochon, 190 S.W.3d 263, 268 (Tex. App.CHouston
[1st Dist.] 2006, no pet.).  Only the
first element is relevant here.[4]








The record demonstrates that Valderas moved out
of the Bronco Trail residence in November 2003. 
Although she and Antonio had a close relationship thereafter, she did
not move back in with him.  Because the
property that Valderas claims Ayala converted remained in the residence, she
did not have possession of the property. 
We must therefore determine the sufficiency of the evidence to support
her ownership or entitlement to possession of the property.  See Augillard, 257 S.W.3d at 500.  Whether Valderas had any ownership or
entitlement to the property depends on the type of relationship that she had
with Antonio.

Valderas opined that she and Antonio were common
law married.  To find that a common law
marriage exists in Texas, the following elements must be established: (1) an
agreement to be married; (2) living together in Texas as husband and wife
subsequent to the agreement to be married; and (3) representing to others in
Texas that they were married.  Tex. Fam.
Code Ann. ' 2.401(a)(2) (Vernon 2006).

Valderas testified that she and Antonio lived
together, but there was no evidence that she and Antonio had an agreement to be
married or that they represented to others in Texas that they were married at
any point during their relationship. 
There is thus no evidence to support Valderas=s
contention that she and Antonio were common law married.








Moreover, the family code provides that a
marriage is void if entered into when either party has an existing marriage to
another person that has not been dissolved by legal action or terminated by the
death of the other spouse.  Id. ' 6.202(a).  The burden of showing that the prior marriage
was not dissolved is on the party attacking the validity of the most recent
marriage.  In re Estate of Loveless,
64 S.W.3d 564, 574 (Tex. App.CTexarkana
2001, no pet.).  That party must
establish both the existence of the prior marriage and its continuing validity
at the time of the later alleged marriage and must introduce sufficient
evidence, standing alone, to negate the dissolution of the prior marriage.  Id.; see also Tex. Fam. Code
Ann. ' 1.102;
Estate of Claveria v. Claveria, 615 S.W.2d 164, 165 (Tex. 1981).  Ayala met this burden.








Valderas testified that she saw Antonio=s 1967
marriage license after his death.  She
called the Arecords department@ to
determine if he had ever filed for divorce but discovered nothing.  She agreed that Antonio was married in 1967
and that he was never divorced.  Ayala
entered the 1967 marriage certificate into evidence.  Ayala testified that Antonio=s legal
wife did not attend Antonio=s
funeral because she had a broken ankle. 
Consequently, notwithstanding the lack of evidence to support the
claimed common law marriage, any common law marriage between Valderas and
Antonio was invalid and void because Ayala established that Antonio had a prior
marriage that had not been dissolved by legal action or by the death of his
spouse.  See Tex. Fam. Code Ann. ' 6.202(a);
see also Home Indem. Co. v. Edwards, 488 S.W.2d 561, 563 (Tex. Civ. App.CFort
Worth 1972, writ ref=d n.r.e.) (A[N]either
of the parties had the capacity to enter into a common-law marriage because
their previous marriages to others had not been terminated by divorce,
annulment or the death of their respective spouses.@); Barker
v. Lee, 337 S.W.2d 637, 639 (Tex. Civ. App.CEastland
1960, no writ) (ASince such marriage relationship
between Emma King and Wilson King was at all material times a valid subsisting
marriage, the subsequent purported common-law marriage between Emma King and
appellant was invalid.@).

The record further fails to demonstrate that
Valderas was a putative spouse.  A
putative marriage is one that was entered into in good faith by at least one of
the parties, but which is invalid by reason of an existing impediment on the
part of one or both parties.  Garduno
v. Garduno, 760 S.W.2d 735, 738 (Tex. App.CCorpus
Christi 1988, no writ); In re Marriage of Sanger, No. 06-99-00039-CV,
1999 WL 742607, at *3 (Tex. App.CTexarkana
Sept. 24, 1999, no pet.) (not designated for publication).  A putative marriage may arise out of a common
law marriage.  Garduno, 760 S.W.2d
at 738; see also Hupp v. Hupp, 235 S.W.2d 753, 756 (Tex. Civ. App.CFort
Worth 1950, writ ref=d n.r.e.).  The effect of a putative marriage is to give
the putative spouse, who acted in good faith, rights to property acquired
during the marital relationship that are analogous to those rights given to a
lawful spouse.  Sanger, 1999 WL
742607, at *3.








Valderas testified that she did not learn that
Antonio was married until 1990.  Because
Antonio=s prior
marriage was an impediment to a valid common law marriage between him and
Valderas, the parties could have entered into a putative marriage during the
time that Valderas was unaware of Antonio=s prior
marriage, which was from 1975 to 1990, according to Valderas=s
testimony, if there is evidence that Valderas and Antonio agreed to a common
law marriage during this time period. 
But as we have discussed above, there is no evidence that Valderas and
Antonio were common law married at any point during their relationship,
including from 1975 to 1990.  There being
no underlying common law marriage, Valderas was not a putative spouse.








The record demonstrates that Valderas had a
meretricious relationship or a Alive-in@
relationship with Antonio.  If the
relationship was meretricious, neither one of the individuals has a good faith
belief that they are entering into a marital relationship.  Id. 
Each party is entitled to the property acquired during the relationship
in proportion to the value that his or her labor contributed to its
acquisition.  Hovious v. Hovious,
No. 02-04-00169-CV, 2005 WL 555219, at *6 (Tex. App.CFort
Worth Mar. 10, 2005, pet. denied) (mem. op.). 
If Valderas and Antonio had a live-in relationship, Valderas would be
entitled to a share of the property in the same proportion that her labor
contributed to the purchase price so long as she could show that the money used
to buy the property was acquired in whole or in part by her labor before the
property was purchased.  See Small v.
Harper, 638 S.W.2d 24, 28 (Tex. App.CHouston
[1st Dist.] 1982, writ ref=d
n.r.e.); see also 39 Aloysius Leopold, Texas Practice: Marital
Property and Homesteads ' 21.9B.10
(1993) (discussing live-in relationships). 
Thus, to the extent there is any difference between a meretricious
relationship and a live-in relationship, ownership interests in property
arising from such relationships are the same.[5]








Here, Valderas testified that she did not
purchase all of the converted property with her separate assets but that she
deposited her earned money in an account with Antonio=s money
and that they used the commingled money to jointly purchase the personal
property in the residence.  According to
Valderas, AAll I know is that when Tony and
I put our money together, it came out from the same thing.@  Valderas thus contributed her money to the
acquisition of the property.  Whether
Valderas and Antonio had a meretricious relationship or a live-in relationship,
Valderas consequently acquired some ownership or a right of ownership interest
in the purchased property as a result of her contribution to the purchase price
of the property.  See Small, 638
S.W.2d at 28; Sanger, 1999 WL 742607, at *3.  Utilizing the appropriate standards of
review, we hold that the evidence is legally and factually sufficient to show
that Valderas had ownership or a right of ownership interest in the property
the subject of the suit.  We overrule
Ayala=s first
and second issues.

V.  DAMAGES

In her third issue, Ayala argues that the trial
court erred by denying her motion for new trial because the evidence is
factually insufficient to support the jury=s award
of actual damages for the conversion.  We
agree.

Generally, the measure of damages in a conversion
case is the fair market value of the property converted at the time of the
conversion, with legal interest.  United
Mobile Networks, L.P., v. Deaton, 939 S.W.2d 146, 147B48 (Tex.
1997); Imperial Sugar Co., Inc. v. Torrans, 604 S.W.2d 73, 74 (Tex.
1980); Khorshid, Inc. v. Christian, 257 S.W.3d 748, 760 (Tex. App.CDallas
2008, no pet.).  Fair market value has
been defined as the price which the property would bring when it is offered for
sale by one who desires, but is not obliged to sell, and is bought by one who
is under no necessity of buying it.  Burns,
190 S.W.2d at 270.  A property owner may
testify about the market value of his property if his testimony shows that he
is familiar with the market value and his opinion is based on that market
value.  Khorshid, Inc., 257 S.W.3d
at 760.  The jury has broad discretion to
award damages within the range of evidence presented at trial, so long as a
rational basis exists for its calculation. 
Id.








Here, Valderas testified about a document
entitled, AList of Claims.@  The document lists the property in the
residence that Valderas claimed Ayala converted as well as a numerical value
for each item.  The subtotal of the
values for all the items is $38,060.00. 
Although Valderas agreed that property depreciates, she unequivocally testified
that the values attributed to each item were the replacement costs for the new
items.  For example, Valderas listed the
value of a television center at $200.00, a Abig@ air
compressor at $1,500.00, and a Asmall@ air
compressor at $600.00.

Ayala, on the other hand, testified that some of
the items on the list were sold at a garage sale.  Her evidence demonstrates that she sold the
television center for $60.00, the Abig@ air
compressor for $100.00, and the Asmall@ air
compressor for $75.00.  There are other
items that Ayala sold for amounts significantly less than the values that
Valderas attributed to the items on her AList of
Claims.@  She sold a headboard for $60.00, two end
table dressers for $10.00, a AQueen
blonde wood bed,@ excluding the mattress, for
$110.00, a drill for $100.00, and a A>92= Z28
Camaro@ for
$300.00.  Valderas, however, listed the
value of a sleigh bed and mattress at $950.00, the end table dressers at
$100.00, the wood bed with mattress at $900.00, the drill at $550.00, and the
Camaro at $8,000.00.  Ayala thus
presented controverting evidence probative of the fair market value of the
items that were sold at a garage sale.








The values set forth on Valderas=s AList of
Claims@ do not
identify the fair market value of the property. 
The list instead identifies the value of the items if purchased
new.  The jury=s
damages award is based on Valderas=s AList of
Claims,@ not
Ayala=s
testimony regarding the value of the items that she sold.  Consequently, although the jury had broad
discretion to award damages within the range of evidence presented at trial, a
rational basis does not exist for its calculation because the award is not
appropriately based on the fair market value of the property at the time of the
conversion.  We hold that the evidence is
factually insufficient to support the jury=s
damages award.  See Bishop v. Geno
Designs, Inc., 631 S.W.2d 581, 584 (Tex. App.CTyler
1982, no writ) (holding evidence insufficient to support damages award because
no evidence of fair market value of property converted).  Accordingly, we sustain Ayala=s third
issue.

VI.  CONCLUSION

Having sustained Ayala=s third
issue, we reverse the trial court=s
judgment and remand for proceedings consistent with this opinion.

 

 

DIXON
W. HOLMAN

JUSTICE

PANEL:  LIVINGSTON, HOLMAN, and
GARDNER, JJ.  

DELIVERED:  October 23, 2008











[1]See Tex. R. App. P. 47.4.





[2]One of Valderas=s sons, however, managed to enter
the house and retrieve three televisions, pictures, and some clothes.





[3]Valderas did not file an Appellee=s brief.





[4]Ayala=s statement of her first issue
seems to additionally challenge the second element of conversionCunlawful and unauthorized exercise
of dominion and control over property. 
To the extent Ayala intended to challenge the legal sufficiency of the
evidence to support the element of conversion requiring that Valderas prove
Ayala=s unlawful and unauthorized
exercise of dominion and control over the property, this ground was not raised
in Ayala=s motion for judgment
notwithstanding the verdict or motion for new trial, nor was it raised in some
other manner sufficient to preserve error. 
See Cecil v. Smith, 804 S.W.2d 509, 510B11 (Tex. 1991) (stating that to
preserve a legal sufficiency challenge, party must have specifically raised it
in a motion for instructed verdict, an objection to the submission of a jury
question, a motion for judgment notwithstanding the verdict, a motion to
disregard a jury=s answer to a vital fact question,
or a motion for new trial).  It was
therefore not preserved for appellate review.





[5]Valderas and Antonio may have also
held the property as tenants in common.  See
16 Tex. Jur. 3d Cotenancy and Joint Ownership, '' 2, 7 (2006) (stating that
tenancy in common is an undivided possessory interest in property and that a
cotenancy is created when two or more persons share the unity of exclusive use
and possession of the same property).