

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-134-CV

MARY AYALA                                         APPELLANT

V.

MARGO VALDERAS                               APPELLEE

-----------

### FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

-----------

## MEMORANDUM OPINION[1]

-----------

## I. INTRODUCTION

This is a conversion case. Appellant Mary Ayala appeals from a jury verdict and judgment in favor of Appellee Margo Valderas. In three issues, Ayala argues that the trial court erred by denying her motion for judgment notwithstanding the verdict because there is no evidence to show that Valderas

---

[1] *See* Tex. R. App. P. 47.4.

had ownership or a right of ownership in certain property and by denying her motion for new trial because there is insufficient evidence to show that Valderas had an ownership interest in the property and to support the jury's award of actual damages. We will reverse and remand.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Valderas met Antonio Valderas in 1974. With the exception of at least one one-month separation, Valderas and Antonio had a "pretty stable relationship" from 1974 to 2003, living together part of the time in Texas and part of the time in Illinois. They had three children during their relationship, but they never married. Valderas changed her last name from Rosales to Valderas in either late 1974 or early 1975.

Antonio told Valderas that he was divorced and that he had one child. Valderas, however, later learned that Antonio had three children and that he had married a woman in 1967 and never divorced her. Valderas first heard that Antonio was married either in 1974 or 1975 or sometime around 1990. She opined that she and Antonio were common law married.

Over the course of the relationship, Valderas had paychecks directly deposited into Antonio's checking account, she and Antonio filed joint tax returns marked "Married," they paid bills "together," and they lived together as "husband and wife." Antonio's sister, Ayala, however, did not recognize

2

Valderas as her sister-in-law, nor did she consider Valderas and Antonio to be a "couple" because she knew that Antonio was married to someone else.

Antonio became very ill in 2002. Valderas moved out of the residence located on Bronco Trail in November 2003, but she and Antonio continued to have a close relationship. Antonio was hospitalized in March 2004. During his hospitalization, Ayala locked Valderas out of the Bronco Trail residence. Valderas was unable to retrieve any of the items that she claimed were hers from inside of the residence.[2]

Antonio died in August 2004. Valderas learned in June or July 2004 that Antonio had a will that named Ayala his personal representative and, with the exception of $1 to each of his children, his sole beneficiary. At the time of trial, Ayala had not probated the will because she thought that she only had to dispose of the property as the will directed her to do.

Valderas sued Ayala for conversion and breach of contract in May 2005. She demanded the return of claimed converted property or damages in the amount of $41,359.00, which included $3,299.00 that she paid for Antonio's funeral expenses. At trial, Valderas testified about a "List of Claims" containing numerous items from the Bronco Trail residence that she contended were hers

---

[2] One of Valderas's sons, however, managed to enter the house and retrieve three televisions, pictures, and some clothes.

because of her relationship with Antonio. Ayala testified that some of the items were sold at a garage sale or returned to family in Illinois and that some items were not at the Bronco Trail residence. The jury found that Ayala committed "theft/conversion," and it awarded damages to Valderas in the amount of $33,060.00.

Ayala filed a motion for judgment notwithstanding the verdict challenging the legal sufficiency of the jury's implied finding that Valderas owned or possessed the converted property. Ayala also filed a motion for new trial challenging the factual sufficiency of the evidence to support Valderas's ownership or possession of the property and the amount of damages. The trial court denied both motions, and it entered judgment awarding Valderas $33,000.00 on her conversion claim. This appeal followed.[3]

### III. STANDARDS OF REVIEW

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite

---

[3] Valderas did not file an Appellee's brief.

4

of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding. *Mar.*

5

*Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.), *cert. denied*, 525 U.S. 1017 (1998).

### IV.  OWNERSHIP OR POSSESSION

In her first issue, Ayala argues that the trial court erred by denying her motion for judgment notwithstanding the verdict because there is no evidence that Valderas had ownership or a right of ownership interest in the converted property or that Ayala exercised wrongful dominion or control over Valderas's property.  In her second issue, Ayala challenges the factual sufficiency of the evidence to support the jury's implied ownership finding.

Conversion is the wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971).  Conversion is concerned with possession and not title. *Carpenters Local Union No. 1266 v. Tex. State Fed'n of Labor Bldg. Ass'n*, 288 S.W.2d 874, 877 (Tex. Civ. App.—Austin 1956, writ ref'd n.r.e.). To establish conversion of personal property, a plaintiff must prove that (1) she owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the

6

property; and (4) the defendant refused to return the property. *Augillard v. Madura*, 257 S.W.3d 494, 500 (Tex. App.—Austin 2008, no pet.); *Burns v. Rhochon*, 190 S.W.3d 263, 268 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Only the first element is relevant here.[4]

The record demonstrates that Valderas moved out of the Bronco Trail residence in November 2003. Although she and Antonio had a close relationship thereafter, she did not move back in with him. Because the property that Valderas claims Ayala converted remained in the residence, she did not have possession of the property. We must therefore determine the sufficiency of the evidence to support her ownership or entitlement to possession of the property. *See Augillard,* 257 S.W.3d at 500. Whether

---

[4] Ayala's statement of her first issue seems to additionally challenge the second element of conversion—unlawful and unauthorized exercise of dominion and control over property. To the extent Ayala intended to challenge the legal sufficiency of the evidence to support the element of conversion requiring that Valderas prove Ayala's unlawful and unauthorized exercise of dominion and control over the property, this ground was not raised in Ayala's motion for judgment notwithstanding the verdict or motion for new trial, nor was it raised in some other manner sufficient to preserve error. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991) (stating that to preserve a legal sufficiency challenge, party must have specifically raised it in a motion for instructed verdict, an objection to the submission of a jury question, a motion for judgment notwithstanding the verdict, a motion to disregard a jury's answer to a vital fact question, or a motion for new trial). It was therefore not preserved for appellate review.

7

Valderas had any ownership or entitlement to the property depends on the type of relationship that she had with Antonio.

Valderas opined that she and Antonio were common law married. To find that a common law marriage exists in Texas, the following elements must be established: (1) an agreement to be married; (2) living together in Texas as husband and wife subsequent to the agreement to be married; and (3) representing to others in Texas that they were married. Tex. Fam. Code Ann. § 2.401(a)(2) (Vernon 2006).

Valderas testified that she and Antonio lived together, but there was no evidence that she and Antonio had an agreement to be married or that they represented to others in Texas that they were married at any point during their relationship. There is thus no evidence to support Valderas's contention that she and Antonio were common law married.

Moreover, the family code provides that a marriage is void if entered into when either party has an existing marriage to another person that has not been dissolved by legal action or terminated by the death of the other spouse. *Id*. § 6.202(a). The burden of showing that the prior marriage was not dissolved is on the party attacking the validity of the most recent marriage. *In re Estate of Loveless*, 64 S.W.3d 564, 574 (Tex. App.—Texarkana 2001, no pet.). That party must establish both the existence of the prior marriage and its continuing

8

validity at the time of the later alleged marriage and must introduce sufficient evidence, standing alone, to negate the dissolution of the prior marriage. *Id.*; *see also* Tex. Fam. Code Ann. § 1.102; *Estate of Claveria v. Claveria*, 615 S.W.2d 164, 165 (Tex. 1981). Ayala met this burden.

Valderas testified that she saw Antonio's 1967 marriage license after his death. She called the "records department" to determine if he had ever filed for divorce but discovered nothing. She agreed that Antonio was married in 1967 and that he was never divorced. Ayala entered the 1967 marriage certificate into evidence. Ayala testified that Antonio's legal wife did not attend Antonio's funeral because she had a broken ankle. Consequently, notwithstanding the lack of evidence to support the claimed common law marriage, any common law marriage between Valderas and Antonio was invalid and void because Ayala established that Antonio had a prior marriage that had not been dissolved by legal action or by the death of his spouse. *See* Tex. Fam. Code Ann. § 6.202(a); *see also Home Indem. Co. v. Edwards*, 488 S.W.2d 561, 563 (Tex. Civ. App.—Fort Worth 1972, writ ref'd n.r.e.) ("[N]either of the parties had the capacity to enter into a common-law marriage because their previous marriages to others had not been terminated by divorce, annulment or the death of their respective spouses."); *Barker v. Lee*, 337 S.W.2d 637, 639 (Tex. Civ. App.—Eastland 1960, no writ) ("Since such marriage relationship between

9

Emma King and Wilson King was at all material times a valid subsisting marriage, the subsequent purported common-law marriage between Emma King and appellant was invalid.").

The record further fails to demonstrate that Valderas was a putative spouse. A putative marriage is one that was entered into in good faith by at least one of the parties, but which is invalid by reason of an existing impediment on the part of one or both parties. *Garduno v. Garduno*, 760 S.W.2d 735, 738 (Tex. App.—Corpus Christi 1988, no writ); *In re Marriage of Sanger*, No. 06-99-00039-CV, 1999 WL 742607, at *3 (Tex. App.—Texarkana Sept. 24, 1999, no pet.) (not designated for publication). A putative marriage may arise out of a common law marriage. *Garduno*, 760 S.W.2d at 738; *see also Hupp v. Hupp*, 235 S.W.2d 753, 756 (Tex. Civ. App.—Fort Worth 1950, writ ref'd n.r.e.). The effect of a putative marriage is to give the putative spouse, who acted in good faith, rights to property acquired during the marital relationship that are analogous to those rights given to a lawful spouse. *Sanger*, 1999 WL 742607, at *3.

Valderas testified that she did not learn that Antonio was married until 1990. Because Antonio's prior marriage was an impediment to a valid common law marriage between him and Valderas, the parties could have entered into a putative marriage during the time that Valderas was unaware of Antonio's prior

10

marriage, which was from 1975 to 1990, according to Valderas's testimony, if there is evidence that Valderas and Antonio agreed to a common law marriage during this time period. But as we have discussed above, there is no evidence that Valderas and Antonio were common law married at any point during their relationship, including from 1975 to 1990. There being no underlying common law marriage, Valderas was not a putative spouse.

The record demonstrates that Valderas had a meretricious relationship or a "live-in" relationship with Antonio. If the relationship was meretricious, neither one of the individuals has a good faith belief that they are entering into a marital relationship. *Id*. Each party is entitled to the property acquired during the relationship in proportion to the value that his or her labor contributed to its acquisition. *Hovious v. Hovious*, No. 02-04-00169-CV, 2005 WL 555219, at *6 (Tex. App.—Fort Worth Mar. 10, 2005, pet. denied) (mem. op.). If Valderas and Antonio had a live-in relationship, Valderas would be entitled to a share of the property in the same proportion that her labor contributed to the purchase price so long as she could show that the money used to buy the property was acquired in whole or in part by her labor before the property was purchased. *See Small v. Harper*, 638 S.W.2d 24, 28 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.); *see also* 39 Aloysius Leopold, *Texas Practice: Marital Property and Homesteads* § 21.9–.10 (1993) (discussing live-in relationships). Thus, to

11

the extent there is any difference between a meretricious relationship and a live-in relationship, ownership interests in property arising from such relationships are the same.[5]

Here, Valderas testified that she did not purchase all of the converted property with her separate assets but that she deposited her earned money in an account with Antonio's money and that they used the commingled money to jointly purchase the personal property in the residence. According to Valderas, "All I know is that when Tony and I put our money together, it came out from the same thing." Valderas thus contributed her money to the acquisition of the property. Whether Valderas and Antonio had a meretricious relationship or a live-in relationship, Valderas consequently acquired some ownership or a right of ownership interest in the purchased property as a result of her contribution to the purchase price of the property. *See Small*, 638 S.W.2d at 28; *Sanger*, 1999 WL 742607, at *3. Utilizing the appropriate standards of review, we hold that the evidence is legally and factually sufficient

---

[5] Valderas and Antonio may have also held the property as tenants in common. *See* 16 Tex. Jur. 3d *Cotenancy and Joint Ownership*, §§ 2, 7 (2006) (stating that tenancy in common is an undivided possessory interest in property and that a cotenancy is created when two or more persons share the unity of exclusive use and possession of the same property).

to show that Valderas had ownership or a right of ownership interest in the property the subject of the suit. We overrule Ayala's first and second issues.

## V. DAMAGES

In her third issue, Ayala argues that the trial court erred by denying her motion for new trial because the evidence is factually insufficient to support the jury's award of actual damages for the conversion. We agree.

Generally, the measure of damages in a conversion case is the fair market value of the property converted at the time of the conversion, with legal interest. *United Mobile Networks, L.P., v. Deaton,* 939 S.W.2d 146, 147–48 (Tex. 1997); *Imperial Sugar Co., Inc. v. Torrans*, 604 S.W.2d 73, 74 (Tex. 1980); *Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 760 (Tex. App.—Dallas 2008, no pet.). Fair market value has been defined as the price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it. *Burns*, 190 S.W.2d at 270. A property owner may testify about the market value of his property if his testimony shows that he is familiar with the market value and his opinion is based on that market value. *Khorshid, Inc.*, 257 S.W.3d at 760. The jury has broad discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for its calculation. *Id*.

Here, Valderas testified about a document entitled, "List of Claims." The document lists the property in the residence that Valderas claimed Ayala converted as well as a numerical value for each item. The subtotal of the values for all the items is $38,060.00. Although Valderas agreed that property depreciates, she unequivocally testified that the values attributed to each item were the replacement costs for the new items. For example, Valderas listed the value of a television center at $200.00, a "big" air compressor at $1,500.00, and a "small" air compressor at $600.00.

Ayala, on the other hand, testified that some of the items on the list were sold at a garage sale. Her evidence demonstrates that she sold the television center for $60.00, the "big" air compressor for $100.00, and the "small" air compressor for $75.00. There are other items that Ayala sold for amounts significantly less than the values that Valderas attributed to the items on her "List of Claims." She sold a headboard for $60.00, two end table dressers for $10.00, a "Queen blonde wood bed," excluding the mattress, for $110.00, a drill for $100.00, and a "'92' Z28 Camaro" for $300.00. Valderas, however, listed the value of a sleigh bed and mattress at $950.00, the end table dressers at $100.00, the wood bed with mattress at $900.00, the drill at $550.00, and the Camaro at $8,000.00. Ayala thus presented controverting evidence probative of the fair market value of the items that were sold at a garage sale.

14

The values set forth on Valderas's "List of Claims" do not identify the fair market value of the property. The list instead identifies the value of the items if purchased new. The jury's damages award is based on Valderas's "List of Claims," not Ayala's testimony regarding the value of the items that she sold. Consequently, although the jury had broad discretion to award damages within the range of evidence presented at trial, a rational basis does not exist for its calculation because the award is not appropriately based on the fair market value of the property at the time of the conversion. We hold that the evidence is factually insufficient to support the jury's damages award. *See Bishop v. Geno Designs, Inc.*, 631 S.W.2d 581, 584 (Tex. App.—Tyler 1982, no writ) (holding evidence insufficient to support damages award because no evidence of fair market value of property converted). Accordingly, we sustain Ayala's third issue.

## VI. CONCLUSION

Having sustained Ayala's third issue, we reverse the trial court's judgment and remand for proceedings consistent with this opinion.

DIXON W. HOLMAN
JUSTICE

PANEL:  LIVINGSTON, HOLMAN, and GARDNER, JJ.

15

DELIVERED:  October 23, 2008